STATE OF NORTH DAKOTA EX REL. OLE STENSBY, for and in Behalf of His Minor Son, Alf Stensby, Petitioner, v. W. F. McCLELLAND, as Superintendent of the State Training School at Mandan, North Dakota, Defendant.

(226 N. W. 540.)

Opinion filed July 29, 1929.

*N. J. Bothne,* for petitioner.
*Edgar P. Mattson,* State's Attorney of Eddy county, for respondent.

CHRISTIANSON, J. Ole Stensby petitioned this court for a writ of habeas corpus in behalf of his minor son, Alf Stensby. The material

and undisputed facts, as stated in the petition for the writ, are as follows:

"That said Alf Stensby, in whose behalf this petition (writ) is applied for, is a minor son of your petitioner herein; that said Alf Stensby is now restrained of his liberty and is kept and confined in the state training school at Mandan, in the county of Morton, state of North Dakota, by the above named defendant, W. F. McClelland, as the superintendent and man in charge of the said state training school.

"That according to the knowledge and belief of your petitioner herein, the cause or pretense of such confinement and restraint is as follows, to-wit: That on the 20th day of February, 1928, in the juvenile court in and for Eddy county, North Dakota, before the Hon. J. A. Coffey, judge of the fourth judicial district, in said state, the said Alf Stensby was by an order of said juvenile court declared and adjudged a delinquent child within the meaning of the juvenile law of this state, and was then committed as a delinquent child by said juvenile court to the state training school at Mandan, Morton county, North Dakota, for an indefinite period, under the care and guardianship of the above-named defendant, W. F. McClelland, as the superintendent of said state training school; and that said defendant, as such superintendent, is now keeping, detaining and restraining said Alf Stensby, as a delinquent child, in said state training school, under and by virtue of said order of commitment made and issued by said juvenile court, as aforesaid.

"That said Alf Stensby is now past the age of eighteen (18) years; that he was born on the 6th day of September, 1910, and was eighteen (18) years of age on the 6th day of September, 1928."

It is the contention of the relator that the juvenile court has no power to commit a delinquent child longer than until such child has reached the age of eighteen years. The respondent, on the other hand, contends that where a child under the age of eighteen is brought before a juvenile court, the court has power to commit such child until it has reached the age of twenty-one years. The case turns upon the correctness of these respective contentions.

The juvenile court was established in this state in 1911. Laws 1911, chap. 177. It is a matter of common knowledge that at this

time, and for some time prior thereto, there had been prevalent in this country a strong public sentiment that special judicial institutions ought to be established to deal with cases of juvenile waywardness; that children ought not to be judged in ways and by means designed for their elders; that ordinarily the delinquent child should not be regarded or treated as a criminal, but as misdirected and misguided, and hence in need of and entitled to receive treatment, encouragement, assistance, maintenance, protection and education. The juvenile law of this state was formulated on these principles.

Section 1 provides:

"All dependent, neglected and delinquent children under the age of eighteen years, shall, for the purpose of this act only, be considered wards of this state and their persons shall be subject to the care, guardianship and control of the court as hereinafter provided."

Section 21 says:

"This act shall be liberally construed to the end that its purpose may be carried out, to wit: that the care, custody and discipline of the child shall approximate as nearly as may be that which should be given by its parents, . . . and in cases of delinquency, that as far as practicable any delinquent child shall be treated, not as a criminal, but as misdirected and misguided and needing aid, encouragement and assistance, and if such child cannot be properly cared for and corrected in its own home, or with the assistance and help of the probation officers, then that it may be placed in some suitable institution where it may be helped and educated and equipped for industrial efficiency and useful citizenship."

The words "delinquent child" are defined by § 2 of the act to include "any child who while under the age of eighteen years violates any law of the state." The procedure prescribed by the act is civil in its nature rather than criminal. The proceedings are instituted upon petition and the process issued thereon is a summons. Every section of the act relating to a proceeding affecting a dependent, neglected or delinquent child provides that the child to be proceeded against or concerning whom any order is made "shall be under the age of eighteen years." As regards delinquent children, the act provides that:

"If the court shall find any child under the age of eighteen (18) to be a delinquent within the meaning of this act, the court may allow

such child to remain at its own home subject to the friendly visitation of a juvenile officer, such child to report to the court or juvenile officer with such record of its conduct in its home or school as the court may require as often as may be required, and if the parent, parents, guardian or custodian consent thereto, or if the court shall further find either that the parent, parents, guardian or custodian are unfit or improper guardians or are unable or unwilling to care for, protect, educate or discipline such child and shall further find that the parent, parents, guardian or custodian are unfit or improper guardians or are unable or unwilling to care for, protect, educate or discipline such child and shall further find that it is for the interest of such child and of the people of this state that such child be taken from the custody of its parents, parent, custodian or guardian, the court may appoint some proper person or juvenile officer, guardian over the person of such child and permit it to remain at its home, or order such guardian to cause such child to be placed in a suitable family home, or cause it to be boarded out in some suitable home, or the court may commit such child to any institution incorporated under the laws of this state to care for delinquent children, or to any institution that has been or may be provided by the state, county, city, town or village suitable for the care of delinquent children, including a detention home or school, or to some association that will receive it, embracing in its object the care of neglected, dependent or delinquent children and which has been duly accredited as hereinafter provided. In every case where such child is committed to an institution or association, the court shall appoint the president, secretary or superintendent of such institution or association, guardian over the person of such child, and shall order such guardian to place such child in such institution or with such association, whereof he is such officer, and to hold such child, care for, train and educate it subject to the rules and laws that may be in force, from time to time governing such institution or association, and to the supervision of and further orders of said juvenile court."

It seems entirely clear that the juvenile court act furnishes no authority for a juvenile court to entertain any proceedings or enter any order against a person over the age of eighteen years. It also seems entirely clear that the legislature intended that where a person under the age of eighteen years violates a law, he should not (in the first

instance) be proceeded against by criminal action but by proceedings had under the Juvenile Court Act.

Thus, § 15 of the act provides:

"If any child under the age of eighteen years is arrested with or without warrant, such child shall instead of being taken before a justice of the peace or police magistrate, be given into the care of a juvenile officer of said county, and the officer having the child in charge shall take the child before such juvenile court and in any case the county (district) court may proceed to hear and dispose of the case in the same manner as if the child had been brought before the court upon petition as herein provided. In any case, the court shall require notice to be given and investigation to be made as in other cases under this act, and may adjourn the hearing from time to time for that purpose."

While the act thus requires that proceedings against a "delinquent child" be had first in the juvenile court, it does not require that final and exclusive jurisdiction over delinquent children be exercised by such court. It recognizes that in some cases the juvenile delinquent may in fact be a person who ought to be held responsible as an adult under the criminal laws of this state and proceeded against as such.

The act (§ 11) provides:

"The court may in its discretion in any case of a delinquent child permit such child to be proceeded against in accordance with the laws that may be in force in this state governing the commission of crimes or violation of city, village, or town ordinances; in such case the petition filed under this act shall be dismissed."

At the time of the enactment of the Juvenile Court Act there was in existence certain laws of this state relating to juvenile offenders. Some of these laws were abrogated by the provisions of the Juvenile Court Act; other provisions remained in full force and effect, except in so far as they were modified or qualified in their operation by the Juvenile Court Act. State ex rel. Neville v. Overby, 54 N. D. 295, 305, 209 N. W. 552. One of the latter provisions was § 10,401, N. D. Rev. Codes 1905, which reads as follows:

"Whenever any person under the age of eighteen years shall, in any district court of this state, be found guilty of a crime or public offense other than murder, such court may, if in its judgment the accused is

a proper subject therefor, instead of entering judgment against such person, direct by an order to be entered in the minutes of the court, that such person be committed to the state reform school for the remainder of such person's minority."

When the thirteenth legislative assembly convened in January 1913 there were only two classes of cases in which a district judge was authorized to commit a person to the reform school: (1) In a case arising, and upon proceedings had, under the juvenile court act; and (2) in a case falling within the provisions of § 10,401, Codes 1905. With the law in this condition the thirteenth legislative assembly enacted two laws dealing with the commitment of persons to the reform school.

First. It amended § 10,401, supra (Laws 1913, chap. 242) to read as follows:

"Whenever any person under the age of twenty years shall in any district court or county court having increased jurisdiction of this state be found guilty of a crime or public offense, other than murder, such court may, if in its judgment the accused is a proper subject therefor, instead of entering judgment against such person, direct by an order to be entered in the minutes of the court that such person be committed to the state reform school until such person attains the age of twenty-one (21) years."

Second. It enacted chapter 241, Laws 1913, entitled "An Act Defining Minority as Regards Persons Sentenced to the State Reform School." This law reads as follows:

"In all cases where under the laws of this state the judge of the district court is authorized to sentence a person to the state reform school during the minority of such person, the person sentenced shall, regardless of sex, be deemed a minor until the age of twenty-one years is reached." Laws 1913, chap. 241.

Chapter 242 was introduced in the House of Representatives on February 14, 1913. H. J. p. 737. As introduced it applied only to district courts. The words "or county courts having increased jurisdiction" were added as an amendment upon the recommendation of the House Committee to whom the bill had been referred for consideration. 2 H. J. p. 1139. The bill was passed on February 27th by the unanimous vote of the members of the House of Representatives present and voting thereon. 2 H. J. p. 1354. On March 7th, it was passed by the

Senate as received from the House, there being thirty votes in favor of passage, one against passage; nineteen senators being absent or not voting. S. J. p. 1484.

Chapter 241, Laws of 1913, was introduced in the Senate February 15th and referred to the committee on state affairs. S. J. p. 470. It was recommended for passage and passed without change on February 28th,—receiving forty-six ayes, and one nay, with six senators absent or not voting. The bill was received in the House of Representatives on March 1st, and placed upon its first and second reading. 2 H. J. pp. 1433–1437. It was recommended for passage without change and was passed without a dissenting vote by the House of Representatives on March 6th. 2 H. J. p. 1777.

The question presents itself, what was the legislative purpose in enacting these two statutes? Were they both intended to apply only to cases where juvenile offenders have been found guilty in a criminal action? Was either of them intended to apply in cases where commitments are made under the Juvenile Court Act?

Chapter 242 purports to be an amendment of a then existing law. It was entitled "An Act Specifying Who May Be Sent to the State Reform School and Amending § 10,401 of the Revised Codes of North Dakota of 1905." It made the following changes in the then existing law:

1. Under the then existing law only offenders under the age of eighteen years might be committed to the reform school; chapter 242 increased the age of such offenders to twenty years.

2. The existing law was applicable only to district courts; chapter 242 is applicable as well to county courts having increased jurisdiction.

3. The existing law authorized the district court to commit a juvenile offender to the state reform school only for the remainder of such person's minority (which in the case of females would be until the person committed had reached the age of eighteen years); chapter 242 changed this so as to authorize commitment until the person committed, regardless of sex, should attain the age of twenty-one years.

Chapter 241 does not purport to be an amendment of any existing statute; but does purport to establish a rule which will be applicable under, and to that extent affect the operation of, then existing laws.

It specifically purports to be applicable "in *all* cases where, under the laws of this state, the judge of the district court is authorized to sentence a person to the state reform school during the minority of such person." And it says that in such cases "the person sentenced shall, regardless of sex, be deemed a minor until the age of twenty-one is reached." The statute applies only to cases in district courts, and does not purport to apply to cases in county courts having increased jurisdiction. At the time of the enactment of this statute a district judge was authorized, in cases arising under the Juvenile Court Act, to sentence, that is to commit, a juvenile delinquent to the state reform school during the minority of such person as defined in that act.

It will be noted from the history of these legislative enactments, that they were contemporaneous measures. They were not only enacted by the same legislative assembly but were pending therein and considered at the same time; and in one of the houses they were referred to and acted upon by the same legislative committee. It will also be noted that the House of Representatives had passed chapter 242 some days before chapter 241 was received by it from the Senate. If the only purpose sought to be accomplished by chapter 241 was to define minority as regards persons proceeded against by criminal action and to make the age of majority the same for both sexes as regards such actions, then obviously it was a wholly unnecessary piece of legislation because chapter 242, which the house of representatives had already passed, was clearly designed to and did accomplish this very purpose. In this connection it is somewhat significant that the legislative assembly amended chapter 242 during the course of its passage so as to make it applicable to county courts having increased jurisdiction. No such amendment was made as regards chapter 241. Under the Juvenile Court Act the district courts, and they alone, are juvenile courts. Laws 1911, chap. 177, § 3. The judge of the district court, and he alone, may commit a person to the state reform school under the Juvenile Court Act. If it had been the legislative purpose that chapter 241 should apply only in cases where a juvenile offender had been convicted of crime in a criminal action the same reason would have existed for extending the application of this statute to county courts having increased jurisdiction as existed for extending the provisions of chapter 242 to such courts.

It is said that the word "sentence" in chapter 241, supra, evidences an intention on the part of the legislature that the statute should apply only to cases in which an infant has been convicted of crime. We are unable to agree with this argument. It is true, in a technical legal sense, the word "sentence" as applied to a judgment means a judgment in a criminal action,—that is, it means the judgment of the law which the court is commanded to pronounce declaring to the accused the legal consequences of the guilt which he has confessed or of which he is convicted. 18 C. J. 1266. But, it is equally true that in common parlance, even among the legal profession and in the decisions of the courts the word "sentence" is frequently used as a synonym for commitment and applied as well in civil as in criminal cases. If the word "sentence" is construed as meaning a judgment pronounced by the court declaring to an accused in a criminal action the legal consequences of a determination of guilt, then chapter 241, Laws 1913 was and is wholly inoperative and the enactment thereof was an idle act; for at the time of its enactment a judge of the district court had no authority to "sentence," that is, to pronounce judgment of imprisonment in the state reform school as a punishment for crime. At the time of the enactment of chapter 241, and during the entire history of the state prior thereto our laws had specifically provided that "whenever any person under the age of eighteen years shall . . . be found guilty of crime the court may, if in its judgment the accused is a proper subject therefor, instead of entering judgment against such person direct by an order to be entered in the minutes of the court that such person be committed to the state reform school, etc." Laws 1890, chap. 164, § 10; Revised Codes 1905, § 10,401.

As already noted the legislative assembly which convened in January 1913 did not abrogate the rule thus announced but extended it so as to apply to all persons under the age of twenty years; and further extended it so as to apply to county courts having increased jurisdiction as well as district courts and authorized the court to commit all persons (female as well as male) to the state reform school until the person so committed had reached the age of twenty-one years.

Chapters 241 and 242 both relate to commitments to the state reform school. It must, of course, be assumed that the legislative assembly intended to accomplish some purpose by chapter 241 different

from that which it had sought to accomplish by chapter 242. Chapter 242 relates only to cases where a person under the age of twenty years has been convicted of crime and authorizes the court in such cases "instead of entering judgment" to commit such person to the state reform school until he or she shall have reached the age of twenty-one years. If chapter 241 does not apply to commitments made under the juvenile court act, then it applies only to cases where there has been a conviction for crime, that is, it applies only to the class of cases covered by chapter 242, and the legislature accomplished no purpose whatsoever by enacting chapter 241. It is only natural that the legislature while dealing with the subject of commitment to the reform school, and after having made provision for commitment of person convicted of crime, also, should have considered commitments of persons other than those convicted of crime (that is, commitments under the Juvenile Court Act) ; and when chapter 241 is construed in light of the history of the enactment thereof, it seems clear that it was intended to apply to and include commitments made under the Juvenile Court Act,—in short, that it was intended to authorize a judge of the district court to make commitments to the state reform school in all cases until the person committed had reached the age of twenty-one years.

As regards the construction to be placed upon chapter 241, supra, it is significant that when the act became effective it was uniformly construed by all persons charged with any duty thereunder, including all the district judges of the state, as applicable to cases arising under the Juvenile Court Act and as authorizing a district judge to commit a delinquent child to the state reform school until such child has reached the age of twenty-one years. The contemporary construction thus placed upon the act and subsequently adhered to, with practical unanimity, throughout the years is entitled to great weight. 2 Lewis's Sutherland, Stat. Constr. 2d ed. §§ 472, et seq. It should not be assumed that the different officers charged with the duty of administering the law, including all the district judges of the state, have violated the law and made commitments without authority and that hundreds of persons have been detained in the state reform school (now known as the State Training School) without any authority of law whatsoever.

But it is said that the provision in section one of the Juvenile Court Act "that all dependent, neglected, and delinquent children under the

age of eighteen years shall for the purpose of this act only, be considered wards of the state and their persons shall be subject to the care, guardianship, and control of the court as hereinafter provided," of necessity limits the guardianship provided in the act to children under the age of eighteen years and that, consequently the juvenile court is without power to appoint a guardian for any longer period than until the child has reached the age of eighteen years.

The guardianship provided by the Juvenile Court Act is not a general one. It is restricted to that of custody and control of the child. Section 24 of the act (Comp. Laws 1913, § 11,425) provides that nothing in the act "shall be construed to give to the guardian appointed under this act the guardianship of the estate of the child or to change the age of minority for any other purpose except the custody of the child." While the law in force at the time the Juvenile Court Act was enacted made no specific provision that the superintendent of the reform school should be appointed guardian of an incorrigible child committed to the reform school the result was the same for he was given custody and control over the child and to that extent was to all practical purposes substituted for the natural or legal guardian of the child; and under such statutes any infant committed to the reform school, either as an incorrigible child or otherwise, was required to be committed until such child had reached the age of twenty-one years. See Rev. Codes 1905, §§ 10,401–10,405.

The laws of this state have always recognized that "the abuse of parental authority is the subject of judicial cognizance . . . and when the abuse is established the child may be freed from the dominion of the parent and the duty of support and education enforced." Comp. Laws 1913, § 4,428. While the Juvenile Court Act makes no reference to the right of parents to have custody and control of their child, the act clearly recognizes that the parents "owe the first duty and have the primary right" to the custody and control of their child even though the child may be a delinquent one. Re Solberg, 52 N. D. 522–525, 528, 529, 203 N. W. 898. Before the state has any power to deprive parents of the custody and control of a child and place such custody and control in a guardian appointed under the Juvenile Court Act the court must find not only that the child is a delinquent within the meaning of the Juvenile Court Act but (unless the parents consent that the

child be committed to an institution as a delinquent and the superintendent thereof appointed a guardian under the Juvenile Court Act) it must "further find either that the parent, parents, guardian or custodian are unfit or improper guardians or are unable or unwilling to care for, protect, educate or discipline such child and . . . that it is for the interests of such child and for the people of this state that such child be taken from the custody of its parents, parent, custodian or guardian." Comp. Laws 1913, § 11,411; Re Solberg, 52 N. D. 522, 528, 203 N. W. 898. And "if such child cannot be properly cared for and corrected in its own home, or with the assistance and help of the probation officers, then it may be placed in some suitable institution where it may be helped and educated and equipped for industrial efficiency and useful citizenship." Comp. Laws 1913, § 11,422.

The guardianship provided by the Juvenile Court Act is intended to facilitate and carry out the policy and purposes of the act; and where the parents, guardian or custodian have proven so derelict in their duties as to demonstrate their unfitness to have custody of and control over the child, there is imposed upon the state the duty of providing a proper guardian. It is only when the juvenile court finds that the parents are unfit to have custody and control that it has power to interfere with the custody and control of the parents. When such unfitness is established, there, of course, rests upon the juvenile court a corresponding duty to exercise the power vested in it: it then becomes incumbent upon the juvenile court to determine what provision it shall make for the custody of the child, and according to the plain letter of the statute the primary consideration which should guide in its determination is "the best interests of the child and the people of the state." If the court deems that such interest will be best subserved by so doing it "may commit such child either to the reform school or to any institution incorporated under the laws of this state to care for delinquent children or to any institution that has been provided by the state, county, town or village suitable for the care of delinquent children including a detention home or school or an association that will receive it embracing in its object the care of neglected, dependent or delinquent children and which has been duly accredited," as provided in the Juvenile Court Act. Comp. Laws 1913, § 11,411.

While the reform school has not been considered a penal institution

but rather an educational one, that is, an institution in which delinquent children may receive proper training, it is, nevertheless, an institution, and the only institution established by the state, for the purpose of furnishing training and education to delinquent children; and our laws contemplate that it is only the more serious cases of delinquency that shall be dealt with by commitment to this institution, for the legislature has provided that not only delinquents committed under the Juvenile Court Act but juvenile offenders who have been convicted of crime in the courts of the state may, when the trial judge deems the accused a proper subject therefor, be committed to the reform school for care, training and education.

As has been noted no person could or can be committed to the state reform school (without the consent of the parents or guardian) unless the parents or guardian by reason of unfitness, or disregard of their duties have forfeited their correlative rights to the care and custody of the child; even in case of delinquency on the part of the child and unfitness on the part of the parents, it is not contemplated that the child shall be committed to the state reform school unless the case is one where "the interests of the child and the people of the state" require it. Yet, if chapter 241, supra, is not applicable to cases arising under the Juvenile Court Act then if and when a boy under the age of eighteen years is committed to the state reform school because he is delinquent and because his parents are found to be unfit to discharge the duty incumbent upon them, then when such boy reaches the age of eighteen years the guardianship which the state has provided "for the interest of the child and of the people of the state" ceases and for the remaining period of his infancy, that is, until such boy reaches the age of twenty-one years he becomes subject to the custody and control of the very parents whose unfitness to have such custody and control had been judicially determined as a condition precedent to his commitment to the state training school in the first instance. As said, the guardianship provided by the Juvenile Court Act is a limited one. It is limited to the custody and control of the child, hence it necessarily follows that when the legislature authorized a judge of the district court to commit a child to the state training school until he or she has reached the age of twenty-one years that the right of custody and con-

trol, that is, the functions of the guardianship, will continue during the entire time of such commitment.

It is contended by the petitioner that the decision of this court in Re Blackey, 53 N. D. 852, 208 N. W. 238, is contrary to the rule which we now announce. There is some language in the decision in that case which may appear to be of somewhat contrary import; but what was said in that case had reference only to the Juvenile Court Act. It will be noted that the decision in that case makes no reference whatever to chapter 241, Laws 1913. The question of the effect of that statute upon proceedings had, and commitments made, under the Juvenile Court Act, was not raised by either of the parties and was not considered or even alluded to in the prevailing opinion in the case. It has been said by the highest court in the land that "the positive authority of a decision is co-extensive only with the facts on which it is made." Ogden v. Saunders, 12 Wheat. 333, 6 L. ed. 647. The Blackey Case presented a wholly different state of facts. In that case it was sought to commit an alleged delinquent child over twenty years of age to the state reform school (now known as the state training school). It is true certain proceedings had been had in the juvenile court against such child while he was under the age of eighteen years; but no written record had been made and no written order of commitment had been entered in the case at all. Whatever order had been made was wholly oral and carried as it were in the breast of the trial court. Reason and authority both declare that such proceedings and orders are precisely the same as though they had never been had or made. In short the Blackey Case stood precisely as though the court had sought to exercise jurisdiction under the Juvenile Court Act and commit a person over the age of twenty years to the state training school. The only question raised and argued by counsel for the petitioner in that case was that the alleged proceedings had, and order made, in the juvenile court while the child was under the age of eighteen years, and of which no written record had been made, constituted no foundation whatever for an alleged order of commitment made some four years later, and after the child had reached the age of twenty years or over. All the members of the court were agreed that this contention was well founded, and obviously it was decisive of the case. Inasmuch as there was no order of commitment, the question whether the court would have had

the power to make such order was not involved, or necessary to a decision. Consequently anything said in the Blackey Case regarding the power of the district court to enter an order, in a proceeding had under the Juvenile Court Act, committing a person who is then under eighteen years of age to the state training school until such person has reached the age of twenty-one years, is not controlling as an authority here.

It follows from what has been said that where proceedings are had in the juvenile court against a person under the age of eighteen years the juvenile court has authority to commit such person to the state training school until such juvenile delinquent has reached the age of twenty-one years. Hence, Alf Stensby is not unlawfully restrained of his liberty, but is held under a valid order of commitment. The application for a writ of habeas corpus is denied.

BIRDZELL and NUESSLE, JJ., concur.

BURR, J. (dissenting). This whole case is contained in proceedings had under what is known as the juvenile law of this state. That the child Alf. Stensby was a delinquent child does not mean there were any criminal proceedings against him. The term "delinquent" is a broad term and does not necessarily mean one who had committed acts criminal in their nature. There is no suggestion of any criminal proceedings whatever in this matter.

There is no dispute as to the facts. Alf. Stensby was brought before the juvenile division of the district court under the provisions of chapter 177 of the Session Laws of 1911, being chapter 23 of the Code of Criminal Procedure of this state, known as the "Juvenile Court" Act, on the charge of being a delinquent child. No criminal complaint or information was filed against him. All of the proceedings were had under what is known as the juvenile law. On February 20, 1928, the court committed him to the state training school of this state otherwise known as the Reform School. On the 6th day of September, 1928, this minor became eighteen years of age. It is the contention of the applicant, that the superintendent of the state training school has no further control over the minor and that the juvenile branch of the district court

has no further jurisdiction over him because the said minor has now reached the age of eighteen years.

It must be conceded that under the provisions of this chapter 23, providing for a juvenile court, when a minor attains the age of eighteen years he ceases to be a ward of the district court so far as the purposes of that act are concerned unless certain legislation subsequently adopted affects the situation, for under the provisions of § 11,402 of the Compiled Laws "all dependent, neglected and delinquent children under the age of eighteen years, shall, for the purposes of this act only, be considered wards of this state and their persons shall be subject to the care, guardianship and control of the court as hereinafter provided." As said in the Solberg Case—Re Solberg, 52 N. D. 518, 525, 203 N. W. 898—

"The law gives parents the right to the custody of their children. There is no express provision in the juvenile court law to this effect but nothing therein is inconsistent with the general statutes that have been in force since early territorial days. Comp. Laws 1913, § 4424; Sess. Laws 1923, chap. 153. The amendment of 1923 gives both parents the same right in this respect and is subsequent to the Juvenile Act. It is only when it is made to appear that the parents and the parental home fail adequately to meet the responsibility of caring for the child that the state is justified in substituting itself as its guardian."

It is clear therefore that under the provisions of § 11,402 the state substitutes itself as the guardian of the child "for the purposes of this act only" and until the child is eighteen. Ordinarily children are not considered wards of this state. It is "for the purposes of this act only" they are so considered wards, and there is no provision whatever making them wards of the state after they are eighteen. It is essential to keep this in mind because if Alf. Stensby is to be detained in the state industrial school he must be detained as "a ward of the state" and not as a "criminal." He is not a criminal nor charged with crime.

It is the claim of the respondent, however, that certain legislation adopted in 1913 modifies this juvenile law so that a delinquent child, proceeded against in the juvenile court, remains a ward of the court until twenty-one years of age regardless of sex.

Prior to that time we had on the statute books § 10,401 of the Code of 1905 which provided that "whenever any person under the age of eighteen years shall, in any district court of this state, be found guilty of a crime or public offense, other than murder, such court may, if in its judgment the accused is a proper subject therefor, instead of entering judgment against such person, direct by an order to be entered in the minutes of the court, that such person be committed to the state reform school for the remainder of such minority."

In 1913 the legislature of this state enacted chapter 242 of the Session Laws of 1913, amending § 10,401 of the Code of 1905 by increasing the age from eighteen years to twenty years and giving the same power to a "county court having increased jurisdiction." Another amendment was made by the legislature of 1925 (chapter 196 of the Session Laws of 1925) but we need not consider either. It is clear, that this statute with its amendments is not applicable to the case at bar because the minor involved herein has not been "found guilty of a crime or public offense" in any court. Therefore this minor cannot be detained by the superintendent of the state industrial school under the provisions of this law with its amendments as found in Section 11,281 of the Supplement. This law provides for an extension of the time of detention for a minor found guilty of a crime; but it does not extend the time of wardship under the juvenile law. The guardianship under the juvenile law is for correction, instruction and education and has no suggestion of criminal procedure. The juvenile law is a charitable, and educational act; whereas this one under consideration is providing for training, control and discipline of a child branded as a criminal.

This legislature of 1913 passed this statute also:

"In all cases where under the laws of this state the judge of the district court is authorized to sentence a person to the state reform school during the minority of such person, the person sentenced shall, regardless of sex, be deemed a minor until the age of twenty-one years is reached." Chapter 241 of the Session Laws of 1913 being § 11,282 of the Compiled Laws of 1913. It is the contention of the respondent that this law is applicable to the case at bar.

This statute is entitled "An act defining minority as regards persons *sentenced* to the state reform school." It does not purport to

amend any of the provisions of the juvenile law; it makes no reference whatever to any provision or section of the juvenile law, and it does not purport to amend any law, it does not even state that "all acts and parts of acts in conflict with this law are hereby repealed" which is the usual clause where it is presumed to come in conflict with some other law. It is an independent enactment. It cannot be said the legislature did not know of the juvenile law hence we cannot concede that the legislature intended in any way to amend the juvenile law unless the provisions of this law are so diametrically opposed to and irreconcilable with the provisions of the juvenile law that both laws cannot stand.

Again, the legislature of 1915 amended the juvenile law by making provision for juvenile commissioners and said that this was "In order to more fully carry out the provisions of chapter 177 of the Laws of the State of North Dakota for the year 1911 entitled 'Juvenile Court' (same being §§ 11,402 to 11,428 inclusive, Compiled Laws of 1913)." It is clear the legislature of 1915 deemed that under the provisions of the juvenile law the minor ceased to be a ward of the court at eighteen for it expressly refers to § 11,402 in its entirety and makes provision for the sending of these minors "to the reform school or other institution of this state." The legislature did not consider that chapter 241 of the Session Laws of 1913 worked any amendment to the juvenile law even as to age. Again, the legislature of 1921 adopted amendments to the juvenile law and said in § 1 of chapter 83 that "In order to more fully carry out the provisions of chapter 177 of the Laws of the state of North Dakota for the year 1911, entitled 'Juvenile Court' (same being §§ 11,402 to 11,428 inclusive, Compiled Laws of 1913)," the district court shall appoint two juvenile commissioners. The same section makes provision for the sending of the minor "to the reform school or other institution of this state," and makes no reference to chapter 241 of the Session Laws of 1913 but specifically refers to § 11,402 setting the wardship of minors up to eighteen years of age. Evidently this legislature had no thought that such chapter 241 of the Session Laws of 1913 amended the juvenile law or had any bearing upon it. That the legislature of 1923 regarded only minors under eighteen years of age as being wards of the court must

be clear from chapter 168 of the Session Laws of 1923, for it said in § 1 of that act:

"At the trial of a minor under the age of eighteen years charged with any crime, the judge or magistrate, prior to his being brought into the court room, shall clear the same of all persons, except officers of the court, attorneys, witnesses and relatives."

Why "a minor under eighteen years?" Evidently because such minor is "a ward of the court," and one over that age is not. It was only when the minor was under eighteen that the court room should be cleared but when the minor was over eighteen the court room need not be cleared. It is clear this legislature contemplated that it was only minors under eighteen who are wards of the court.

Further it will be noticed that this law—chapter 241 of the Session Laws of 1913—is limited to persons "sentenced" to the state reform school but does not purport to affect those "committed" under the provisions of the juvenile law. To amend the whole juvenile law so as to make minors wards of the state in certain cases until they reach the age of twenty-one years it is necessary to do violence to the word "sentence," to stretch it to include the word "commitment" and also amend chapter 177 of the Session Laws of 1911—the Juvenile Court Act—when the legislature made no reference whatever to this act in chapter 241, either in its title or its language, or even by providing for the repeal of anything in conflict therewith, and when subsequent legislatures did not contemplate that chapter 241 was applicable to the juvenile court law.

It is said that unless this word "sentence" be so defined and unless we consider chapter 241 amends the juvenile court act there was no need for the enactment of chapter 241, that its provisions were all included in chapter 242 and therefore it was a useless piece of legislation. Chapter 241 contemplated a trial for a criminal offense, and that the court was proceeding to sentence a minor. It may be it was unnecessary. It may be that the same legislature passed two laws covering the same identical subject when one was sufficient; but it will be noted that chapter 242 was a house bill and chapter 241 was a senate bill and that both were approved in March, the former two days after the latter, and it is quite possible that the legislature in the hurry of the close of the session overlooked the fact that when it approved chapter 241

similar provisions were incorporated in chapter 242. However this is not surprising for chapter 242 being a house bill would be passed by the house during the time that chapter 241 was being considered by the senate. The records of the two houses show this. Thus when chapter 241 came from the Senate the House had already passed chapter 242 and proceeded to consider chapter 241 while the senate having passed chapter 241 proceeded to consider chapter 242. At the time these statutes were before the legislature in 1913, as to-day, a female is of age when she reaches 18 years. It is conceivable the legislature had this in mind and that these laws were intended primarily to apply to girls—both dealing with criminal prosecution. When § 10,401 of the Compiled Laws of 1905 was adopted we had no juvenile law and so that matter of being "wards of the state" was not in contemplation. We have no reason to believe that when this section was amended by chapter 242 of the Session Laws of 1913 that the legislature had "wards of the state" in contemplation. It was merely amending a law dealing with criminal prosecutions. What reason have we to believe the same legislature had the juvenile law in mind or "wards of the state" in contemplation when it adopted chapter 241, conceding both laws cover the same ground? We must so consider it or amend an entirely different statute dealing with an entirely different subject by stretching the word "sentence" to include commitment and to repeal or amend by implication when a statute makes no reference whatever to the laws sought to be amended, and thus invade the rights of parents in their children and to the custody of their children without any definite or clear cut act of the legislature.

It will be interesting to know when this child ceased to be a ward of the state and became a criminal so as to require his detention in the state industrial school. The only proceedings against him are under the juvenile law and as said before there is no suggestion of criminal matters in the case. He ceases to be a ward of the court at eighteen— the juvenile law simply exercised guardianship over a ward—nevertheless the majority of the court says he may be detained until he is twenty-one years of age because of a law which says a child may be "sentenced" to the state industrial school. This child was never "sentenced" to the industrial school; he had committed no crime. The juvenile law has not been amended in any particular, unless we

stretch our imaginations to say that chapter 241 of the Session Laws of 1913, being § 11,282 of Compiled Laws, amended it when no reference whatever is made to it. Thus the child cannot be held under the juvenile law—the law under which he was sent to the state industrial school. It is unique procedure to transmute proceedings, intended to be helpful and educational for an unfortunate child during a guardianship provided by law, into proceedings intended for the criminal child, by the mere passage of time. When does the juvenile court cease to function and the other branch of the district court take charge? It would only have been fair to have given the child an opportunity to contest this and to show that he is not a criminal, nor subject to statutes dealing with crime. If the holding of the majority be correct, then any child, no matter how unfortunate through dependency or neglect, may be held as a ward of the court until he is twenty-one if the court deems it wise, provided the proceedings are commenced before he is eighteen years of age. Certainly there is no such provision in the juvenile law. We learn now that a law intended to express the kindness, charity, and fostering care of the state in protecting minors under eighteen and until they are eighteen, is broadened until by its provision through amendments these same unfortunate minors can be sentenced to the state industrial school until they are twenty-one. To do this should require an amendment so certain and definite in its terms as to leave no question about the intent, instead of stretching the term "sentence" to mean "commitment."

To my mind the superintendent of the state industrial school has no more control over this child, for the child has now reached the age of eighteen. He was not "sentenced" to the industrial school but merely sent there for instruction and education and training until the wardship ended and the guardianship of the state ceased. I am authorized to state that Judge Burke concurs in this dissent.